UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH ALLAN RACHAUSKAS,<br><br>                Plaintiff,<br><br>    v.<br><br>CLARK COUNTY,<br><br>                Defendant. | Case No. C24-5833-TSZ-MLP<br><br>ORDER DECLINING TO SERVE COMPLAINT AND GRANTING LEAVE TO AMEND |

## I.    INTRODUCTION

This is a *pro se* civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Joseph Allan Rachauskas is currently confined at the Stafford Creek Corrections Center in Aberdeen, Washington. He has submitted to the Court for filing an amended civil rights complaint in which he alleges violations of his constitutional rights arising out of his confinement at the Clark County Jail ("Jail") in 2021. (Dkt. # 6.) Along with the amended complaint, Plaintiff filed a motion to appoint counsel. (Dkt. # 7.)

This Court has now screened Plaintiff's amended complaint and identified deficiencies that Plaintiff must cure before this action may proceed. The Court thus declines to order that the amended complaint be served, and grants Plaintiff leave to file a second amended complaint

1  correcting the deficiencies identified below. The Court DENIES Plaintiff's motion to appoint
2  counsel (dkt. # 7) without prejudice.

## II. BACKGROUND

### A. Plaintiff's Original Pleading

Plaintiff filed his original complaint on October 1, 2024, identifying two causes of action against Defendant Clark County ("County"). (Dkt. # 1-1.) He alleged he was housed in a dormitory intended for four people that instead held approximately 30 detainees. (*Id.* at 4, 6.) Plaintiff claimed his constitutional rights were violated when: (1) he caught COVID-19 as a result of extreme overcrowding; and (2) he defecated on himself due to the paucity of bathroom facilities, and corrections officers humiliated him and forced him to wait over four hours for clean clothes. (*Id.* at 4-6.) Plaintiff requested damages of $100,000. (*Id.* at 9.)

After reviewing Plaintiff's original complaint, this Court concluded that Plaintiff had not adequately alleged a cause of action against the County. Thus, on October 18, 2024, the Court issued an Order declining to serve Plaintiff's complaint and granting him leave to file an amended complaint correcting deficiencies specified in the Order. (Dkt. # 3.) The Court explained Plaintiff had not alleged sufficient facts to demonstrate that the County was the moving force behind any violation of his constitutional rights. (*Id.* at 4.)

The Court next set forth the relevant standards for Plaintiff's two claims. The Court explained that Plaintiff's generalized allegations that overcrowding increased the likelihood of COVID-19 exposure failed to identify specific actions the County took or failed to take with "reckless disregard" for his safety. (Dkt. # 3 at 5 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).) The Court observed that Plaintiff had arguably stated a claim for deprivation of adequate sanitation, but had not identified a County policy or custom that

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 2

1  caused the overcrowding and foreseeably led to inadequate sanitation. (*Id.* at 5-6.) Finally, the

2  Court observed that there was no indication corrections officers had humiliated him and forced

3  him to wait hours for clean clothes pursuant to a County policy. (*Id.* at 6.) Accordingly, Plaintiff

4  could not pursue claims related to these allegations unless he identified officers whose

5  intentional conduct caused him harm. (*Id.*)

6        **B.**     **Plaintiff's Amended Pleading**

7       On November 26, 2024, Plaintiff submitted his proposed amended complaint to the Court

8  for review. (Dkt. # 6.) Plaintiff identifies as Defendants the County, County Sheriff Chuck

9  Atkins, Jail Administrator Ric Bishop, Jail Commander K. Beltran, and three unidentified "John

10 Doe" Jail deputies. (*Id.* at 3, 11.) Plaintiff brings three conditions of confinement claims based on

11 allegations that he was housed in a ten-person dormitory with approximately thirty or more other

12 detainees for about five weeks. (*Id.* at 4, 6-7.)

13      Plaintiff asserts in his first count claims against Sheriff Atkins, Mr. Bishop, and

14 Commander Beltran based on inadequate housing and exposure to disease. (Dkt. # 6 at 4.)

15 Plaintiff alleges that on the second day in the dormitory, a new detainee arrived who was

16 coughing. (*Id.*) Despite Plaintiff bringing it to staff's attention, the new detainee was not tested

17 for COVID-19 until a few days later and was found positive. (*Id.* at 4-5.) Plaintiff alleges he

18 became infected with COVID-19. (*Id.* at 5.) As a result, Plaintiff lost his sense of taste and

19 partially lost his sense of smell. (*Id.*)

20      Plaintiff asserts in his second count claims against Sheriff Atkins, Mr. Bishop,

21 Commander Beltran, and the three John Doe deputies. (Dkt. # 6 at 6, 10.) Plaintiff alleges that,

22 because there was only one toilet for thirty or more detainees, he defecated on himself. (*Id.* at 6.)

23 Plaintiff explained the situation to two of the Doe Defendant deputies who were conducting an

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 3

1  hourly walk through, and they said they would bring Plaintiff a change of clothes right away.

2  (*Id.*) Plaintiff alleges that two hours later they had not brought clean clothes, and he explained

3  the situation to a third Doe Defendant deputy who was conducting a walk through. (*Id.*) The third

4  Doe Defendant deputy laughed at Plaintiff and brought the situation to the attention of the entire

5  dormitory. (*Id.*) Two or more hours later, another Jail deputy brought Plaintiff clean clothes. (*Id.*

6  at 6-7.) Plaintiff alleges the humiliation led to him being made fun of for his last two weeks in

7  custody and caused post-traumatic stress disorder. (*Id.* at 7.)

8        In his third count, Plaintiff asserts Sheriff Atkins, Mr. Bishop, Commander Beltran, and

9  the County violated his right to adequate housing. (Dkt. # 6 at 7.) Plaintiff alleges he had to sleep

10  on the floor of the dormitory, which because of his bad back caused "daily pain, excruciating at

11  some points." (*Id.* at 7-8.) Based on his three conditions of confinement claims, Plaintiff seeks

12  $100,000 and an apology. (*Id.* at 9.)

13        **III.    DISCUSSION**

14      **A.    Legal Standards**

15        The Court is required to screen complaints brought by prisoners seeking relief against a

16  governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must "dismiss the

17  complaint, or any portion of the complaint, if the complaint[:] (1) is frivolous, malicious, or fails

18  to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant

19  who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2); *see also*

20  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

21        Rule 8(a) of the Federal Rules of Civil Procedure provides that for a pleading to state a

22  claim for relief it must contain a short and plain statement of the grounds for the court's

23  jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief,

and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he or she was legally required to do that caused the deprivation complained of. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Vicarious liability may not be imposed on a supervisory employee for the acts of their subordinates in an action brought under § 1983. *Lemire v. California Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A supervisor may, however, be held liable under § 1983 "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists

between the supervisor's unlawful conduct and the constitutional violation." *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury, and must demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403–04 (1997) (citing *Monell*, 436 U.S. at 694).

## B. Deficiencies

"Jail officials have a duty to ensure that detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018). To state a claim of unconstitutional conditions of confinement, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (citation omitted).

Plaintiff arguably states claims for unconstitutional conditions of confinement foreseeably caused by overcrowding or failure to take adequate precautions against COVID-19. As discussed below, however, Plaintiff fails to identify proper defendants responsible for the conditions.

ORDER DECLINING TO SERVE COMPLAINT
AND GRANTING LEAVE TO AMEND - 6

        1.    *Defendant Clark County*

Plaintiff's sole claim against the County, found in his third count, is based on allegations that he had to sleep on the dormitory floor. (*See* dkt. # 6 at 7.) As with Plaintiff's original complaint, Plaintiff fails to specifically identify a County custom or policy that caused him injury, or to allege facts demonstrating that the County was the moving force behind any such injury. Plaintiff makes no factual allegations involving the County at all. (*See id.* at 7-8.) If Plaintiff wishes to pursue claims against the County, Plaintiff must identify the County policy or custom that caused him harm, he must set forth clear and specific facts demonstrating that the County, through the identified policy or custom, caused the alleged harm, and he must identify the federal constitutional right he believes was violated by the identified policy or custom.

        2.    *Defendants Bishop, Atkins, and Beltran*

Plaintiff asserts all three claims against Sheriff Atkins, Commander Beltran, and Mr. Bishop. He fails to allege personal involvement by any of them, however. Plaintiff alleges in his third count that his back pain could have been avoided if "the Sheriff, Jail Commander and Administrator had better policies in place." (Dkt. # 6 at 8.) This vague allegation that policies could have been better fails to establish any actionable conduct. Instead, it suggests that Plaintiff seeks to hold Defendants liable on the basis of supervisory responsibility or position, which is impermissible. *See Monell*, 436 U.S. at 691-94. Rather, Plaintiff must allege that each specific defendant's own conduct violated his civil rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90 (1989).

If Plaintiff wishes to pursue claims against Defendants Atkins, Beltran, or Bishop, he must allege specific facts demonstrating that each Defendant did an affirmative act, participated

in another's affirmative act, or omitted to perform an act which he or she was legally required to do that caused the harm complained of. *Arnold*, 637 F.2d at 1355.

   3. Unidentified Doe Defendants

In his second count, Plaintiff alleges two of the Doe Defendants failed to bring him clean clothes and the third laughed at him and caused others to make fun of him. (Dkt. # 6 at 6-7.) Plaintiff claims his right to adequate housing and bathroom facilities was violated. (*Id.* at 6.) Plaintiff's allegations do not indicate that the Doe Defendants were responsible for the overcrowding that rendered the facilities inadequate, however. (*See id.* at 6-7.)

More relevant to the Doe Defendants, Plaintiff refers to his right to "clean clothes"; "to not be humiliated or laughed at"; and "to be treated like a human being." (Dkt. # 6 at 6, 10.) Plaintiff fails to explain how the Doe Defendants' alleged conduct rises to the level of a constitutional violation. While Plaintiff alleges he found the situation humiliating, Plaintiff fails to show a substantial risk of serious harm. *See Gordon*, 888 F.3d at 1125. Without such a showing, Plaintiff cannot pursue claims against the Doe Defendants.

   4. Leave to File an Amended Complaint

The Court declines to order that Plaintiff's amended complaint be served but grants Plaintiff leave to file a second amended complaint curing the above-noted deficiencies. Plaintiff is advised that an amended pleading operates as a *complete* substitute for a prior pleading. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (as amended Feb. 22, 1990), *cert. denied*, 506 U.S. 915 (1992). Thus, any second amended complaint must clearly identify the defendant(s), the constitutional claim(s) asserted, the specific facts which Plaintiff believes support each claim, and the specific relief requested.

### C. Motion to Appoint Counsel

Plaintiff requests appointment of counsel because he is indigent, has learning disabilities, and does not know the law. (Dkt. # 7.) Plaintiff is advised that there is no right to have counsel appointed in cases brought under 42 U.S.C. § 1983. Although the Court, under 28 U.S.C. § 1915(e)(1), can request counsel to represent a party proceeding *in forma pauperis*, the Court may do so only in exceptional circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Wilborn*, 789 F.2d at 1331.

The Court concludes it is premature at this juncture to determine whether Plaintiff has demonstrated an ability to articulate the legal and factual bases of his claim without the assistance of counsel because he has yet to clearly identify the claim upon which he seeks relief in this action, something Plaintiff will have an opportunity to do in his second amended complaint. As for Plaintiff's likelihood of success on the merits of his claim, the record is not yet sufficiently developed for the Court to make such a determination. Therefore, based on the information available to the Court at this early stage, the Court must conclude that Plaintiff has not demonstrated his case involves exceptional circumstances that would warrant the appointment of counsel at this time.

### IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1) Plaintiff shall file any second amended complaint not later than **thirty (30) days** from the date on which this Order is signed. The second amended complaint must carry the same case number as this one. If no second amended complaint is timely filed, the Court will recommend the dismissal of this action.

(2) Plaintiff's motion to appoint counsel (dkt. # 7) is DENIED without prejudice.

(3) The Clerk is directed to send Plaintiff the appropriate forms so that he may file a second amended complaint, and to send copies of this order to Plaintiff and to the Honorable Thomas S. Zilly. The Clerk is further directed to note this matter on this Court's calendar for **February 9, 2025**.

Dated this 13th day of January, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge